UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TITO SANABRIA, | |
|        Petitioner, | |
| v. | CAUSE NO. 1:25cv215 DRL |
| UNITED STATES OF AMERICA, | 1:17cr38 DRL |
|        Respondent. | |

OPINION AND ORDER

Tito Sanabria filed a *pro se* petition to vacate his sentence under 28 U.S.C. § 2255. He argues that his trial attorneys provided ineffective assistance. After assessing these contentions and the record, the court denies the petition.

BACKGROUND

On April 19, 2017, and in the wake of a traffic stop, law enforcement discovered over 308 grams of methamphetamine and other illegal drugs, paraphernalia, and a firearm in Mr. Sanabria's home and car [125 ¶ 11-17, 31, 59-61]. He was subsequently indicted in Hamilton County, Indiana for the methamphetamine in his car [*id.* ¶ 58], and, on August 16, 2018, he received an eight-year prison sentence [*id.*].

Mr. Sanabria was federally indicted on three counts in June 2017 [1]. He requested and received, before his plea, a preliminary investigation report [88; 89; 93], which anticipated that his federal sentence would be imposed to run concurrently to his August 2018 state sentence [93 ¶ 45]. In a letter dated September 29, 2020, his counsel told him his charge under 21 U.S.C. § 841 subjected him to a ten-year mandatory minimum sentence that could only be avoided through a cooperation agreement with the government or under the "safety valve" [151-1 at 4].

In March 2021, he pleaded guilty to count two—possessing with the intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing detectable amounts of methamphetamine [107-1 ¶ 8; 110]. *See* 21 U.S.C. § 841(a)(1). On January 28, 2022, the court sentenced him to 135 months of imprisonment (at the bottom of his guideline range of 135 to 168 months), to run concurrent to his state sentence, followed by five years of supervised release [133].

Mr. Sanabria was represented in his federal case by two court-appointed attorneys. The first represented him from his initial appearance (on August 21, 2018) through proceedings related to a motion to suppress (until September 18, 2019) [72]. His second attorney represented him from September 19, 2019 [74] through his change of plea hearing [110] and sentencing [131].

Once in federal custody, Mr. Sanabria became concerned that he was not receiving the jail time credit to which he was entitled [152-2 ¶ 32]. He petitioned the court to correct his judgment to reflect that his federal sentence should run concurrently to his state sentence, something that was not expressly articulated in the judgment [134; 139]. On February 2, 2024, the court granted his request and amended the judgment accordingly [140; 141].

On February 21, 2024, Mr. Sanabria asked the Bureau of Prisons (BOP) to explain the discrepancy between the jail credit he was allocated (484 days) and the amount he thought he was owed (1,744 days) [152-1 at 11]. The BOP responded in March, explaining the amended judgment meant his federal sentence began the day he entered federal custody (January 28, 2022), rather than the date his state sentence ended (December 1, 2022), but that he was not entitled to additional credit for time served on his state sentence before entering federal custody [*id.*]. On

April 12, 2024, Mr. Sanabria met informally with the BOP, which reiterated its understanding of the credit calculation [*id.* 12]. On April 16, he requested an administrative remedy [*id.* 15].

On April 29, the BOP again explained its calculation [*id.* 16], including how his sentence was computed under 18 U.S.C. § 3585(b), which prohibits granting jail credit for time already applied to another sentence. The BOP shared that he was entitled to credit for the period between his April 19, 2017 arrest and his August 15, 2018 state sentencing. It also said he received additional credit for the period starting when he entered federal custody on January 28, 2022 and ending at the conclusion of his state sentence on December 1, 2022. The BOP said no further adjustment was authorized by statute or ordered by the court.

On October 29, 2024, Mr. Sanabria moved for compassionate release, arguing in part that the BOP failed to calculate his sentence correctly because it did not apply the sentence retroactively [147; 148]. The court denied his motion on November 15, 2024 [149]. In its order, the court noted there was "no measurable disparity between the sentence that was announced and what Mr. Sanabria says the BOP has calculated. The court plainly said his state and federal sentences would run concurrently, without further adjustment." On April 29, 2025, Mr. Sanabria petitioned to vacate his sentence alleging ineffective assistance of counsel [151].

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final

conviction were entitled to *habeas corpus* relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). This writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when a petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific won't suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). When the petition and records conclusively show the petitioner isn't entitled to relief, the court needn't hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016).

## DISCUSSION

A. *Timeliness Under 28 U.S.C. § 2255(f)(4).*

Mr. Sanabria's petition isn't timely. Normally, he would have one year to file his petition from the date the judgment became final. *See* 28 U.S.C. § 2255(f)(1). The amended judgment was entered on February 2, 2024 [141] and became final two weeks later, on February 16, 2024, when the period to file a direct appeal lapsed. *See* Fed. R. App. P. 4(b)(1); *Davis v. United States*, 817 F.3d 319, 327 (7th Cir. 2016). One year thereafter (plus one day because the last day of the limitations period was a Sunday) gave Mr. Sanabria until February 17, 2025 to file this petition. *See* 28 U.S.C. § 2255(f)(1); Fed. R. Civ. P. 6(a)(1).

4

Mr. Sanabria argues his motion, filed on April 29, 2025, is nevertheless timely under § 2255(f)(4), which permits the petition to be filed within one year of the date on which the facts relevant to the petition "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). He says he could not have discovered the relevant facts before November 15, 2024. Just on its face, this cannot be true because he raised a version of this argument in his compassionate release motion before then: that the BOP failed to credit an additional 1,260 days to his sentence for the time he spent in state prison before his federal conviction. Still, he says, it was the court's November 15 order denying that motion that was the earliest date he could reasonably determine that he had an ineffective assistance claim.

"[D]ue diligence does not mean the maximum feasible diligence." *Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011) (quotation omitted). In conducting a due diligence inquiry, the court is obliged to consider "that prisoners are limited by their physical confinement." *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004). And § 2255(f)(4) serves to "make[] allowance for late-discovered evidence." *Mandacina v. Entzel*, 991 F.3d 758, 761 (7th Cir. 2021).

On this record, Mr. Sanabria knew by February 21, 2024 that there was a "discrepancy of 1260 jail credit days" between what trial counsel allegedly promised him and what the BOP calculated [152-1 at 11]. That presented three possibilities—that the BOP was wrong, that he was wrong, or that his counsel was wrong. Indeed, the very prospect of his counsel's ineffective assistance occurred to him then [152 at 2-3]. Instead of immediately filing a § 2255 motion, he pursued administrative and other legal challenges. That was an election of his own making.

Mr. Sanabria now argues that the relevant information for purposes of starting the statute of limitations under § 2255(f)(4) was "that neither the BOP, nor the court was at fault . . . leaving

5

[trial counsel] holding the proverbial bag" [*id.* 6]. But the statute of limitations started running "when [he] learned about the new 'fact' rather than when he recognized its legal significance." *Wilson v. United States*, 413 F.3d 685 (7th Cir. 2005) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)); *see also Jones v. United States*, 20 F. Appx. 520, 522-23 (7th Cir. 2001) ("Inquiry into due diligence focuses on when the factual predicate of a particular claim *could have been discovered*; recognition of the legal significance of the facts is irrelevant.").

The record shows Mr. Sanabria knew by February 21, 2024 that BOP's credit calculation differed from what trial counsel allegedly promised him [152-1 at 11]. His back-and-forth with BOP and his compassionate release motion ruled out alternate avenues of relief, but they did not provide any new facts that underlie the current petition or suspend the statute of limitations. Thus, under § 2255(f)(4), he had to file his *habeas corpus* petition by February 21, 2025. He filed it on April 29, 2025. It was late. On this ground alone, the petition must be denied.

B. *Ineffective Assistance of Trial Counsel.*

The court nonetheless considers the petition on its merits for the sake of clarity and thoroughness, and perhaps that will ease Mr. Sanabria's worries. He argues that his trial counsel provided ineffective assistance at his change of plea and sentencing.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to

6

his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993). Courts "presume that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (quotation omitted).

        1. *Expectation of a Lower Sentence Based on Assurances Made by Trial Counsel.*

Mr. Sanabria alleges trial counsel falsely assured him he would receive credit for time served on his state sentence. Trial counsel allegedly told him he would get credit "for every day [he] spend[s] in jail" and he would spend "roughly four more years in prison" upon accepting the federal plea agreement [151]. He took these statements to mean that his federal sentence would be adjusted to reflect the time he had already served on his state sentence. He says, without these assurances, he would not have accepted the plea agreement.

But he cannot establish deficient performance or prejudice on this record. *See Strickland*, 466 U.S. at 688, 694. To allege ineffective performance at the plea stage, a petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966-67 (7th Cir. 2013). To show prejudice, he must show a reasonable probability that he would not have pleaded guilty but for counsel's errors. *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005).

Mr. Sanabria alleges his counsel failed to inform him, before he signed the plea agreement, that a "concurrent" sentence would not include jail credit for time already served in state prison and prior to his federal sentence being imposed. He says his misapprehension led him to believe

7

that he would get credit for the time he had already spent incarcerated on his state sentence. He further alleges counsel contributed to this incorrect belief by assuring him that he would only serve "approximately four more years" after sentencing [152-2 ¶ 29]. If Mr. Sanabria had understood at any point that his time already served in state prison would not be credited to his federal sentence, he says he would have found it "worth going to trial" [151 at 7].

The court's plea colloquy can "ameliorate the adverse impact of his counsel's misinformation." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). Though certain statements made at a plea hearing may be impacted by a counsel's constitutionally ineffective actions, *Hurlow*, 726 F.3d at 967, a court should "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). In addition, statements at a plea hearing are made under oath, so the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to his admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quotations and brackets omitted).

Mr. Sanabria's alleged error is "belied by his own statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). At his plea hearing, he said under oath that he understood and was satisfied with the plea agreement [154 Tr. 16, 22]. He said he knew that he faced a minimum sentence of ten years [*id.* Tr. 31]. Contrary to his assertions today, he confirmed under oath that no one had made any promises or assurances of any kind to get him to plead guilty, and that he understood that his plea agreement did not even guarantee him a concurrent sentence at all [154 Tr. 15, 27-28]. Nor did

8

his plea agreement guarantee a concurrent sentence, much less mention one or even a calculation of credit that would begin at the start of his state sentence in progress [107-1].

Mr. Sanabria consequently cannot establish that his trial counsel's performance was deficient, particularly when he understood that he was not entitled to a concurrent sentence and was not assured that type of sentence or any particular calculation of credit. *See United States v. Mzembe*, 979 F.3d 1169, 1173 (7th Cir. 2020) (district court has discretion to apply the federal sentence "either concurrent with or consecutive to the intervening state sentence"). That he might have hoped for a concurrent sentence or hoped that credit time would be calculated to his liking doesn't mean his lawyer was ineffective. Nor could the court prefer his *post hac* statement that he would have pursued a trial when he instead testified under oath that he was willing to plead guilty even understanding that he might not get a concurrent sentence at all. It would be illogical to find that Mr. Sanabria was prejudiced when the court might just as easily have denied a concurrent sentence outright.

"Concurrent" has no unusual legal meaning, and Mr. Sanabria's misapprehension in his own sworn words wasn't a promise or assurance that formed a basis of his plea. That one prison sentence is "concurrent" with another (*i.e.*, runs at the same time) does not imply that a sentence applies retroactively to time already served. *See Matlock v. Sproul*, 2023 U.S. App. LEXIS 8333, 4 (7th Cir. Apr. 6, 2023) ("A sentence does not begin before it is imposed, and we are aware of no statute authorizing a judge to set retroactive starting dates."). A mere misunderstanding on this point does not constitute ineffective assistance of counsel. *See United States v. Redmond*, 667 F.3d 863, 872-73 (7th Cir. 2012) (quoting *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008)) ("A mistake about the substantive offense goes to the heart of the guilty plea; a mistake about the

9

possible sentence . . . does not"). Mr. Sanabria cannot show deficient performance by his trial counsel or prejudice. The petition must be denied on this ground.

### 2. *Failure to Object to Sentence Length.*

Mr. Sanabria also claims trial counsel failed to object at sentencing when the court declined to adjust his sentence downward to account for his time served on his state sentence. He says his sentence would have been 1,260 days shorter had the court adopted his view. But given that the sentence imposed was entirely consistent with the terms of the plea agreement, failure to object does not rise to the level of objective unreasonableness. *See Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014) (when there was "no breach [of the plea agreement], or if any breach was not material and substantial, defense counsel's failure to object was not ineffective assistance"). Lawyers don't have to make every argument available; they "cannot be faulted for eschewing the proverbial kitchen sink and instead focusing on arguments with better odds." *Lickers v. United States*, 98 F.4th 847, 857 (7th Cir. 2024).

And an objection would have gotten him nowhere because it is well-established that only the BOP, not the court, is authorized by Congress to calculate and apply jail credit. *United States v. Wilson*, 503 U.S. 329, 333, 335 (1992); *United States v. Walker*, 917 F.3d 989, 992-93 (7th Cir. 2019). The court could announce a particular sentence (and adjust for time served accordingly), but the court concluded that the lowest reasonable sentence was the one announced. That was 135 months, and his counsel had already argued for 120 months (the statutory minimum). Recasting the argument for time served would not change the sentence when the court was already duty bound to announce the lowest reasonable sentence already. That the court sentenced him at the bottom of the guideline range, and not below, does not mean trial counsel was

ineffective. Because Mr. Sanabria cannot show either ineffective performance or prejudice, the petition must be denied on this ground.

### 3. *Failure to Object to Credibility Finding.*

Mr. Sanabria claims that trial counsel failed to object to the court's credibility finding at sentencing. He says this prejudiced him because, in his view, a "simple mathematical error" hurt Mr. Sanabria's credibility in the eyes of the court. Specifically, Mr. Sanabria admitted at sentencing that he received twelve ounces of methamphetamine (or approximately 340.2 grams) [150 Tr. 27-29]. But law enforcement found only 308.7 grams, suggesting that Mr. Sanabria may have sold the 31 grams left unaccounted. Mr. Sanabria says this discrepancy impacted the court's assessment of his remorsefulness and acceptance of responsibility, increasing his sentence.

Whether his counsel's failure to object to the court's calculation constituted deficient performance, any error was not prejudicial because he hasn't shown why his sentence would have been different if not for this possible discrepancy. Mr. Sanabria's guideline range reflected that he accepted responsibility, and the court sentenced him at the low end of that range. His remorse was clear in his allocution, in which he apologized to the court, his family, and the public [150 Tr. 50]. The court only considered this credibility issue in evaluating his objection to the firearm enhancement, and even then it wasn't alone dispositive—he still had 12 ounces of methamphetamine, many other drugs, cash, and distribution implements such that it wasn't clearly improbable that his possession of a firearm was connected to the drug offense. *See* U.S.S.G. § 2D1.1(b)(1) app. n.11(A); *United States v. Ford*, 22 F.4th 687, 692 (7th Cir. 2022).

In deciding Mr. Sanabria's sentence, the court considered factors like his robust drug operation and possession of a firearm, that he conducted this activity around his child, his

criminal history, and his characteristics, several mitigating as the court described, as well as the sentences received by other comparable offenders [133]. The balance of factors under 18 U.S.C. § 3553(a), originally at sentencing and later in his compassionate release motion, were not hinged on any credibility finding related to his drug weight. He cannot show he was prejudiced by trial counsel's failure to object to the credibility finding at sentencing, so the court must deny the petition on this ground.

C. *Certificate of Appealability*.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). When a petition is dismissed on the merits, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the petition's untimeliness and on Mr. Sanabria's *post hoc* assertions within this petition in ready contrast to his sworn plea, plea agreement, his own exhibits, and the other evidence before the court, reasonable jurists could not debate the conclusions today. The court thus denies a certificate of appealability.

## CONCLUSION

For these reasons, the court DENIES Mr. Sanabria's petition to vacate his sentence under 28 U.S.C. § 2255 [151]. This order terminates the civil case [Cause No. 1:25cv215].

SO ORDERED.

July 24, 2025                                                    *s/ Damon R. Leichty*
                                                                 Judge, United States District Court